UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BETH SOMMERS-WILSON,

       Plaintiff,

v.                                            Case No. 16-CV-14259
                                            HON. MARK A. GOLDSMITH

SAMSUNG SDI AMERICA, INC.,

       Defendant.
_____/

## OPINION & ORDER
## GRANTING IN PART AND DENYING DEFENDANT'S MOTION TO EXCLUDE TESTIMONY OR OTHER EVIDENCE BY CO-EMPLOYEE NON-DECISION MAKERS (Dkt. 58)

This matter is before the Court on Defendant Samsung SDIA America's ("SDIA") motion to exclude testimony or other evidence by co-employee non-decision makers (Dkt. 58). The issues have been fully briefed, and the issues can be resolved without the aid of oral argument. See E.D. Mich. LR 7.1(f)(2); Fed. R. Civ. P. 78(b). For the reasons that follow, the Court grants in part and denies in part the motion.

## I. BACKGROUND

Plaintiff Beth Sommers-Wilson has brought claims of gender discrimination and retaliation following her termination at SDIA. Sommers-Wilson was the Director of Project Management for SDIA and had a strained working relationship with Stefan Roepke, the General Manager of SDIA and her boss. See Am. Op. & Order Denying Summ. J. at 1-2 (Dkt. 75). As evidence of her claims, Sommers-Wilson describes that Roepke would often contradict her in front of her team members and undermine her in other ways. See id. at 2. This, along with a host of other evidence, forms the basis of Sommers-Wilson's prima facie case. SDIA claims that it fired Sommers-Wilson

for a non-discriminatory reason, specifically her management of the "Flourine" project, which SDIA claims was significantly overbudget. See id. at 5. Sommers-Wilson argues that the reason is pretextual, as she was never told of any concerns about her performance before her termination and there is no documentation of a plan to terminate her prior to a comment she made to Roepke in October 2015 about the lack of women in leadership positions at SDIA. See id. at 6-7.

To support her arguments regarding the atmosphere at SDIA, Sommers-Wilson seeks to call multiple witnesses, including co-employees Marina Hamlett and Socorro Kalinowski. A declaration from Hamlett was attached to Sommers-Wilson's response to SDIA's summary judgment motion, and thus far forms the only basis to evaluate the relevance of her potential testimony. In the declaration, she avers that she worked on the Flourine project with Sommers-Wilson as project leader, and describes Sommers-Wilson as "professional, efficient, and organized," explaining that Sommers-Wilson utilized a computer system that tracked tasks and timing and ensured that everybody was held accountable. Hamlett Decl., Ex. B to Pl. Supp. Br. on Mot., ¶¶ 4-5 (Dkt. 78-3). Hamlett also avers that Sommers-Wilson would lead weekly product development meetings, which Roepke would sometimes attend. Id. ¶ 7. She explains that when Roepke attended, he would take over the meeting by disregarding the agenda that Sommers-Wilson had prepared, and that Roepke would pursue a different agenda than the one relevant to the purpose of the meeting. Id. ¶ 8. Hamlett also describes that Roepke would constantly interrupt, ignore, talk over, and cut Hamlett off when she attempted to speak at these meetings, but that he would never treat any of the men this way. Id. ¶ 9. Further, she explains that the Flourine project was always over budget, as it was quoted too low from the beginning. Id. ¶ 12. Hamlett also states

that a less-experienced male was named Senior Engineer over her after Roepke came aboard as General Manager. Id. ¶ 6.[1]

Kalinowski has already provided her testimony for trial by way of a de bene esse deposition.[2] She offered some general opinions, such as describing Sommers-Wilson as a "great leader" and claiming that Roepke did not "show Sommers-Wilson respect" or "value [her] presence at Samsung." Kalinowski Dep., Ex. A-1 to Def. Supp. to. Mot., at 12, 26 (Dkt. 85-2). She also relayed more specific events. She explained that, after Roepke came to Michigan to be in charge of SDIA, she rarely saw Sommers-Wilson and Roepke interact, which was different than Roepke's behavior with male managers and directors. See id. at 22. She described that Roepke would have meetings with male managers without Sommers-Wilson included. See id. at 23-24.

SDIA filed a motion to exclude Hamlett and Kalinowski from testifying. It argued that their proffered testimony should be excluded on relevancy grounds under Federal Rules of Evidence 402 and 403 and as improper opinion testimony under Rule 701. SDIA also argued in its supplemental brief (Dkt. 82) that Hamlett's recitation of the Raines promotion was not factually accurate.

## II. ANALYSIS

**A. Marina Hamlett**

---

[1] The man who was supposedly promoted over Hamlett, Domarius Raines, separately submitted an affidavit disputing Hamlett's version of events, claiming that it was his understanding that it was actually Sommers-Wilson who made the decision to promote him and that he was promoted while working at SDIA's predecessor, Magna Steyr. See Raines Decl., Ex. 5 to Def. Supp. Br. to Mot., ¶ 6 (Dkt. 82-6).

[2] Following the deposition, SDIA filed a motion for leave to file a supplemental brief in support of the motion, which attached the transcript from the deposition. The Court grants the motion (Dkt. 85).

The Court denies the motion as it relates to Marina Hamlett, except that Sommers-Wilson will not be permitted to present her testimony or other evidence regarding the Raines promotion unless developments at trial establish its admissibility.

SDIA has offered two reasons why Hamlett should not be permitted to testify. First, it argues that her testimony is not relevant, or, if it is, its probative value is outweighed by the danger of unfair prejudice, undue delay, confusion of the issues, and misleading the jury. The Court disagrees; much of Hamlett's proffered testimony is relevant under Rule 402 and its probative value is not substantially outweighed by the dangers articulated in Rule 403. Contrary to SDIA's representations, Hamlett does not merely provide self-serving, subjective opinions. Her declaration contains specific examples to support her conclusions, explaining that Sommers-Wilson utilized a computer system to track her team's work on their projects. Hamlett Decl. ¶ 5. She also supports her conclusion that Roepke would "take over" meetings from Sommers-Wilson, detailing that Roepke would disregard the agenda that Sommers-Wilson had prepared, and that his revised agenda would have little to do with the engineering aspects of the project. Id. ¶ 8. Further, she provides relevant background information about the Flourine project, averring that the program was always over budget and was not quoted properly from the beginning. Id. ¶ 12. These pieces of evidence relate to various aspects of Sommers-Wilson's discrimination claim, and thus have high probative value; there is relatively little danger that the testimony will result in any prejudice or undue delay, or that the jury would be misled by it. See Fed. R. Evid. 403.

SDIA also argues that Hamlett may not testify about discriminatory conduct that was directed towards her, as opposed to the conduct directed towards Sommers-Wilson. The Sixth Circuit has explained that a number of factors are relevant when determining the admissibility of this type of "other acts" evidence:

> (1) whether the evidence is logically or reasonably tied to the decision made with respect to the plaintiff; (2) whether the same "bad actors" were involved in the "other" conduct and in the challenged conduct; (3) whether the other acts and the challenged conduct were in close temporal and geographic proximity; (4) whether decision makers within the organization knew of the decisions of others; (5) whether the other affected employees and the plaintiff were similarly situated; and (6) the nature of the employees' allegations.

Schrack v. RNL Carriers, Inc., 565 F. App'x 441, 445 (6th Cir. 2014) (citing Griffin v. Finkbeiner, 689 F.3d 584, 599 (6th Cir. 2012)).

Here, the factors weigh in favor of admission. Hamlett has proffered that Roepke would constantly interrupt, ignore, talk over, and cut her off when she attempted to speak at meetings, and that she never saw him do this to men. See Hamlett Decl. ¶ 9. This is sufficiently linked to the allegations of disrespect towards Sommers-Wilson lodged by both Sommers-Wilson and Hamlett. The same "bad actor," Stefan Roepke, was involved in the allegations of both Sommers-Wilson and Hamlett. The acts were in close temporal and geographic proximity; indeed, the allegations of both women occurred during meetings led by Sommers-Wilson, at which Roepke would supposedly take over from Sommers-Wilson and undermine her authority. Sommers-Wilson and Hamlett were similarly-situated as women in meetings attended by Roepke. Finally, the allegations both involve Roepke's being generally disrespectful toward them. For these reasons, the Court finds that the "other acts" evidence presented by Hamlett satisfies the factors articulated in Schrack and thus is admissible.

This leaves the matter of the Raines promotion. Hamlett's declaration describes that Domarius Raines was named Senior Engineer "[a]fter Stefan Roepke came aboard as General Manager at Samsung SDI" despite Hamlett's more pertinent experience. See Hamlett Decl. ¶ 6. SDIA counters with a declaration from Raines himself, explaining that it was his understanding that the decision to promote him was made by Sommers-Wilson. See Raines Decl. ¶ 6.

5

The Court will exclude any reference to the Raines promotion from trial. There is relatively little probative value in this proposed testimony, as it is not even clear from Hamlett's declaration that it was Roepke's decision to promote Raines over Hamlett. Additionally, Hamlett does not adequately explain how she was more qualified for the position beyond her "more pertinent experience," Hamlett Decl. ¶ 6. And even if she had "more pertinent experience," employers utilize a host of other factors in making promotions – such as educational attainment, work ethic, intelligence, pace of work, and team spirit, among others – none of which Hamlett discusses. Nor does she detail any possible deficits in her qualifications or the absence of same, thereby failing to give anything approaching a sufficiently robust comparison that might lead to an inference of gender-based discrimination. This low probative value is substantially outweighed by the danger of undue delay and confusion of the issues. Admission of the evidence would lead to a mini-trial over the decision to promote Raines – a significant expenditure of time regarding an episode that does not hold much promise of shedding light on the principal issues in the case. Thus, unless circumstances arise during trial that alter this analysis, the Court will exclude any testimony or evidence about the Raines promotion.

For these reasons, the Court denies SDIA's motion as it relates to Hamlett except that testimony or evidence regarding the Raines promotion will be excluded.[3]

---

[3] Aside from its relevance objection, SDIA objects to much of Hamlett's testimony as improper opinion testimony under Rule 701. However, much of her expected testimony is not in the form of an opinion at all, but simply discusses factual matters, such as what took place at meetings. She does offer opinions, such as her statement that the Flourine program was not quoted properly from the beginning, but F.R.E. 701 permits employees to give opinions based on their experience in the workplace. See, e.g., United States v. Munoz-Franco, 487 F.3d 25, 35 (1st Cir. 2007) (allowing an employee's testimony of a bank's business practices because "courts have allowed lay witnesses to express opinions about a business based on the witness's own perceptions and knowledge and participation in the day-to-day affairs of [the] business.") (internal quotation marks omitted) (alteration in original). If a proper foundation is laid, Hamlett may give an opinion on the budgeting process.

**B. Socorro Kalinowski**

The Court has had the opportunity to review the entirety of Kalinowski's testimony, and grants the motion to exclude her testimony in part. Some of Kalinowski's testimony about Sommers-Wilson consists of generalities, i.e., that she is a great leader and that Roepke did not respect her. See Kalinowski Dep. at 12, 26. These totally vague and conclusory opinions are not admissible, because they do not address the specific issues of our case, are simply subjective, or are speculative. See Giles v. Normal Noble, Inc., 88 F. App'x 890, 895 (6th Cir. 2004); Mitchell v. Toledo Hospital, 964 F.2d 577, 583 (6th Cir. 1992); Jones v. St. Jude Medical S.C., Inc., 823 F. Supp. 2d 699, 734-735 (S.D. Ohio 2011).

She did testify to two more specific items. One is that Roepke would meet with male managers without Sommers-Wilson present. See Kalinowksi Dep. at 23-24. The other is that Sommers-Wilson and Roepke rarely spoke in the office, but that Roepke did speak to the men in the office. These factual statements, without any commentary or speculation by Kalinowski, support Sommers-Wilson's factual contention that Roepke treated her differently than the way he treated men. While there may be innocent explanations for these episodes, that possibility does not make the testimony irrelevant. See Masello v. Stanley Works, Inc., 825 F. Supp. 2d 308, 314 (D.N.H. 2011) (finding evidence relevant where it "support[ed] a plausible alternative to the defendants' theory" and noting that "deciding what theory is ultimately more convincing[ is a] task for the jury").

For these reasons, the Court grants in part the motion as it relates to Kalinowski's testimony.

### III. CONCLUSION

As explained above, Defendant's motion to exclude testimony or other evidence by co-employee non-decision makers is granted in part and denied in part. The testimony of Kalinowski will be excluded except fsssor the two factual matters recited above. The parties must confer with the goal of detailing the specific pages and lines that will be played for the jury. They must submit to chambers by 10 a.m. on January 2, 2019, a mark-up of the deposition showing their areas of agreement and disagreement, if any, and what objections stated on the record remain to be resolved. If there are disagreements, the Court will hold a telephonic hearing at 10:00 a.m. on January 3, 2019, to resolve the disagreements. Sommers-Wilson will be allowed to present Hamlett as a witness, except that no evidence related to the Raines promotion will be allowed unless developments at trial justify its admission.

SO ORDERED.

Dated: December 27, 2018  
Detroit, Michigan

s/Mark A. Goldsmith  
MARK A. GOLDSMITH  
United States District Judge