UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BETH SOMMERS-WILSON,

      Plaintiff,

v.                                                     Case No. 16-CV-14259
                                                   HON. MARK A. GOLDSMITH

SAMSUNG SDI AMERICA, INC.,

      Defendant.
_____/

## ORDER GRANTING DEFENDANT'S MOTION TO APPLY STATUTORY CAP TO JURY VERDICT (Dkt. 110)

This matter is before the Court on Defendant Samsung SDI America, Inc.'s ("SDIA") motion to apply statutory cap to jury verdict (Dkt. 110). At trial in this case, the jury awarded Plaintiff Beth Sommers-Wilson $130,000 in past economic damages, $100,000 in past non-economic damages, and $625,000 in punitive damages on her federal and state retaliation claims; the jury found no cause on Plaintiff's federal and state gender discrimination claims. The parties do not dispute that the statutory cap in 42 U.S.C. § 1981a(b)(3) applies, but do dispute how large the cap is. SDIA argues that punitive damages are capped at $50,000, see 42 U.S.C. § 1981a(b)(3)(A), while Sommers-Wilson argues that punitive damages are capped at $300,000, see 42 U.S.C. § 1981a(b)(3)(D). For the reasons that follow, the Court grants SDIA's motion and caps Plaintiff's punitive damages at $50,000.

Title VII caps punitive damages based on the number of persons employed by the respondent. See 42 U.S.C. § 1981a(b)(3).[1] The parties dispute the meaning of "respondent" in the context of this case; SDIA argues that only SDI America, as the named defendant in the case, is a respondent, while Sommers-Wilson contends that SDIA's parent company, which Sommers-Wilson identifies as SDI Co Ltd., is also a respondent.

The Sixth Circuit has not articulated which party bears the burden of proof of establishing the number of employees in applying the statutory cap, but other courts in this circuit have placed it on the defendant. See Herring v. SCI Tennessee Funeral Services, LLC, No. 15-280, 2018 WL 2399050, at *6 (E.D. Tenn. May 24, 2018). If SDIA successfully proves the number of employees at that entity, the burden will shift to Sommers-Wilson to prove that the number of employees should also include the employees at some other entity. See Shipley v. Hypercom Corp., No. 09-0265, 2012 WL 12872905, at *8 n.15 (N.D. Ga. Apr. 10, 2012) (collecting cases in which the

---

[1] "(3) Limitations

The sum of the amount of compensatory damages awarded under this section for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses, and the amount of punitive damages awarded under this section, shall not exceed, for each complaining party—

    (A) in the case of a respondent who has more than 14 and fewer than 101 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $50,000;

    (B) in the case of a respondent who has more than 100 and fewer than 201 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $100,000; and

    (C) in the case of a respondent who has more than 200 and fewer than 501 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $200,000; and

    (D) in the case of a respondent who has more than 500 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $300,000."

plaintiff bore the burden of showing "that other related companies should be integrated with the defendant employer, bringing the employee total up to a higher damages cap").

Here, SDIA has shown persuasively that the size of the company at the time of the retaliatory conduct was under 100 employees. See Corrado Decl., Ex. 2 to Def. Mot. (Dkt. 110-3). Sommers-Wilson has not disputed the number of employees at SDIA, and her rebuttal argument that the Court should consider the number of employees at SDIA's parent company is unavailing. Sommers-Wilson cites only one case in which the size of a parent company was utilized in a Title VII statutory cap analysis.[2] See Herring, 2018 WL 2399050 at *7. That case involved a similar dispute to this one, in that the defendant sought to reduce the award of punitive damages to $200,000 based on the size of the respondent company, while the plaintiff argued that the award should only be reduced to $300,000 based on the size of the respondent company's parent company.

The analysis in Herring, which itself did not include citations to any relevant case law and indeed noted the lack of "clear guidance from this Circuit on this issue", id. at *7, relied on various factors in determining that there was no real distinction between the parent company and the respondent company. Id. These factors included the "intimate[]" involvement of the parent company in the respondent company's personnel matters, the common human-resources policies and procedures between the two companies, the respondent company's use of the parent company's letterhead for performance evaluations and other relevant employee documents, the fact that the ultimate decisionmakers regarding the termination were employees of the parent

---

[2] Sommers-Wilson also cites Greenbaum v. Handelsbanken, 26 F. Supp. 3d 649 (S.D.N.Y. 1998). But in that case, then-Judge Sotomayor merely determined that a New York branch of a foreign bank would not be treated separately for the purposes of applying the statutory cap. Here, there is no meaningful argument that SDIA is merely a branch of SDI globally.

company, and that the fact the EEOC position statement entered as evidence was sent from the parent company.

Here, Sommers-Wilson has argued only that Robert Schaffernak, the boss of SDIA General Manager Stefan Roepke and an SDI Co Ltd. employee,[3] was intimately involved in the decision to fire her and that Sommers-Wilson interacted with SDI higher management on a trip to Korea. See Pl. Resp. at 3 (Dkt. 114). However, unlike in Herring, SDIA utilized its own human-resources processes and professionals in initiating and investigating Sommer-Wilson's claim; further, the testimony at trial established that Stefan Roepke initially suggested the firing of Sommers-Wilson, even though he did report this decision to Schaffernak, see 1/10/2019 Tr. at 140 (Dkt. 123). Given this, it could not be said that Schaffernak, or any entity besides SDIA, was intimately involved in the termination decision.

Because SDIA has shown that it employed fewer than 100 employees at the time of the retaliatory conduct, and because Sommers-Wilson has not shown that the Court should consider some other entity as the "respondent" in this case, the Court grants SDIA's motion. Punitive damages in this case shall be capped at $50,000, pursuant to 42 U.S.C. § 1981a(b)(3)(A).

Accordingly, Sommers-Wilson is entitled to $280,000 in damages – $130,000 for past economic damages, $100,000 in past non-economic damages,[4] and $50,000 in punitive damages.

---

[3] SDIA disputes that Schaffernak is employed by SDI Co Ltd., the parent company; rather, SDIA insists that Schaffernak is employed by Samsung SDIA Battery Systems in Austria, which is a different entity than Samsung Co Ltd. in Korea. See Def. Reply at 1 (Dkt. 115).

[4] Although 42 U.S.C. § 1981a(b)(3)(A) limits punitive and non-economic damages to $50,000, Sommers-Wilson remains entitled to the full reward of $100,000 for past non-economic damages because that amount was awarded as a unitary number for both the federal and state law retaliation claims. See Denhof v. City of Grand Rapids, 494 F.3d 534, 548 (6th Cir. 2007) ("Since the Michigan statute has no damage caps, the Title VII limits do not apply.").

Plaintiff shall file a proposed judgment in accordance with this order by **April 19, 2019**. Defendant shall file any objections to this proposed judgment by **April 26, 2019**.

SO ORDERED.

Dated: April 10, 2019  s/Mark A. Goldsmith
      Detroit, Michigan  MARK A. GOLDSMITH
                      United States District Judge