UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BETH SOMMERS-WILSON,

        Plaintiff,                                 Case No. 16-14259

vs.

                                                  HON. MARK A. GOLDSMITH

SAMSUNG SDI AMERICA, INC.,

        Defendant.
_____/

**OPINION & ORDER
GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR
ATTORNEY FEES, COSTS, AND INTEREST (Dkt. 135)**

This matter is before the Court on Plaintiff Beth Sommers-Wilson's motion for attorney fees, costs, and interest (Dkt. 135). In addition to standard briefing, each party has filed a supplemental brief (Dkts. 139 and 141) to bring recent cases to the Court's attention. For the following reasons, the Court grants in part and denies in part Sommers-Wilson's motion.

**I.     BACKGROUND**

In this employment discrimination case, the jury returned a verdict in favor of Plaintiff Beth Sommers-Wilson on federal and state law retaliation claims but against her on state and federal gender discrimination claims. See Judgment (Dkt. 132). The jury awarded Sommers-Wilson $130,000 in past economic damages, $100,000 in past non-economic damages, and $625,000 in punitive damages. Id. The Court applied the statutory cap set by 42 U.S.C. § 1981a(b)(3)(D) to limit the punitive damages award to $50,000. See 4/10/19 Order (Dkt. 127). The parties now dispute the amount of attorney fees Samsung SDI America ("Samsung") owes to Sommers-Wilson.

Sommers-Wilson seeks $261,003.75 in attorney fees, a $22,036.75 fee enhancement, $10,781.51 in costs, and pre- and post-judgment interest. Mot. at 3-4 (Dkt. 135). Samsung seeks a reduction of 50% or more of the fee award, based on Sommers-Wilson's failure to prevail on her gender discrimination claims, a recovery Samsung portrays as relatively modest, excessive hourly rates for Plaintiff's attorneys Carol Laughbaum and Brian Farrar, the limited roles Farrar and fellow attorney Raymond Sterling played, quarter hour billing, and unnecessary time and expense. Resp. at 11-15 (Dkt. 136). Samsung also contests the fee enhancement and argues that the cost submission is unsupported. Id. at 15-16.

## II.   STANDARD OF REVIEW

Section 706(k) of Title VII of the Civil Rights Act of 1964 authorizes the award of attorney fees to the prevailing party and entrusts the effectuation of this statutory policy to the discretion of the district courts. Christiansburg Garment Co. v. Equal Employment Opportunity Comm'n, 434 U.S. 412, 416 (1978); see also 42 U.S.C. § 2000e-5. Absent special circumstances, the district court must award fees to the prevailing plaintiff. Id. at 417.

To calculate reasonable attorney fees under the federal statute, a district court begins by determining "the fee applicant's 'lodestar,' which is the proven number of hours reasonably expended on the case by an attorney, multiplied by his court-ascertained reasonable hourly rate." Adcock-Ladd v. Sec'y of Treasury, 227 F.3d 343, 349 (6th Cir. 2000). Where a plaintiff achieves "excellent results, his attorney should recover a fully compensatory fee." Hensley v. Eckerhart, 461 U.S. 430, 435 (1983).[1] Where the plaintiff has achieved only partial or limited success, the

---

[1] Hensley involved a claim for attorney fees pursuant to 42 U.S.C. § 1988, but the standard for awarding fees under § 1988 and § 2000e-5(k) is essentially the same. See Virostek v. Liberty Twp. Police Dep't/Trustees, 14 F. App'x 493, 510 (6th Cir. 2001).

lodestar may be an "excessive amount," in which case the district court may reduce the award. Id. at 436. When determining the numerical values to be used in the lodestar calculation and evaluating proposed adjustments, courts typically consider twelve factors:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Id. at 430 n.3 (citing Johnson v. Georgia Highway Exp., Inc., 488 F.2d 714 (5th Cir. 1974)).

Attorney fees should only be reduced "in rare and exceptional cases where specific evidence in the record requires it." Isabel v. City of Memphis, 404 F.3d 404, 416 (6th Cir. 2005). The "strong presumption" that the lodestar figure is reasonable also applies to situations in which the prevailing party seeks a fee enhancement, but "that presumption may be overcome in those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee." Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 554 (2010).

The Elliott-Larsen Civil Rights Act also authorizes a person alleging a violation of the act to receive reasonable attorney fees. Mich. Comp. Laws § 37.2801. In calculating awards under the ELCRA, courts consider a similar set of nine factors. See Grow v. W.A. Thomas Co., 601 N.W.2d 426, 436 (Mich. Ct. App. 1999). The minor differences between the factors approved by Hensley and Grow are not relevant here.

## III. ANALYSIS

Samsung raises a range of objections to the fee award Sommers-Wilson seeks, each of which will be addressed in turn.

### A. The Unsuccessful Discrimination Claims

Samsung concedes that Sommers-Wilson is a prevailing party. Resp. at 3 (Dkt. 136). However, it argues that her "status as a 'prevailing party' does not mean all her fees are recoverable where, as here, she lost significant and distinct parts of the case." Id. Specifically, Samsung refers to Sommers-Wilson's unsuccessful discrimination claims.

In cases where the plaintiff has prevailed on some, but not all claims, the Sixth Circuit has "repeatedly rejected mechanical reductions in fees based on the number of issues on which a plaintiff has prevailed," holding that "'[w]hen claims are based on a common core of facts or are based on related legal theories, for the purpose of calculating attorney fees they should not be treated as distinct claims, and the cost of litigating the related claims should not be reduced.'" Deja Vu v. Metro. Gov't of Nashville and Davidson Cty., Tenn., 421 F.3d 417, 423 (6th Cir. 2005) (quoting Thurman v. Yellow Freight Sys., Inc., 90 F.3d 1160, 1169 (6th Cir. 1996)). Instead, courts considering a fee petition must ask two questions:

> First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?

Hensley, 461 U.S. at 434. Thus, the Court considers the relationship between the discrimination and retaliation claims as well as the overall degree of success Sommers-Wilson achieved.

The Sixth Circuit and Supreme Court have frequently treated discrimination and retaliation claims as related for attorney fee purposes, and the Sixth Circuit has allowed for awards where retaliation is the only successful claim. In Waldo v. Consumers Energy Co., 726 F.3d 802, 823

4

(6th Cir. 2013), the Sixth Circuit acknowledged the link between retaliation and discrimination when holding that "all of the evidence presented concerning the discriminatory treatment of Waldo in the workplace, as well as evidence of retaliation for Waldo's complaints of harassment, related to the hostility Waldo faced at Consumers because of her gender." Waldo further noted the Sixth Circuit's previous conclusion that harassment, discrimination, and hostile work environment claims "are related for purposes of attorney fees" and the conclusion that "'significant legal overlap' between claims of racial discrimination, harassment, and retaliation" justified a full attorney fee recovery. Id. (quoting Jordan v. City of Cleveland, 464 F.3d 584, 603-604 (6th Cir. 2006)).

Samsung attempts to distinguish Waldo by emphasizing the district court's finding that the successful harassment/hostile work environment claim shared a common core of facts with the failed discrimination and retaliation claims. Resp. at 8. This is a correct reading of Waldo, but Samsung does not explain how this feature of Waldo negates Sommers-Wilson's claim that her retaliation and discrimination claims also shared a common core of facts. Samsung's theory appears either to be that discrimination and retaliation allegations are only treated as related if the plaintiff also alleges or proves harassment, or that the plaintiff cannot recover for failed discrimination claims if the only claim that succeeds is a retaliation claim.

The Sixth Circuit has found otherwise. In Lilley v. BTM Corp., the Sixth Circuit found that a plaintiff who "only succeeded in proving retaliatory discharge" could recover for fees and litigation expenses incurred in unsuccessfully pursuing an age discrimination claim. 958 F.2d 746, 755 (6th Cir. 1992). Furthermore, it found that failure to award fees for the discrimination claim would constitute reversible error, id. at 756—a powerful statement in an arena where appellate courts are highly deferential, see, e.g., Hubbell v. FedEx SmartPost, Inc., 933 F.3d 558, 576 (6th

5

Cir. 2019) (affirming a district court's reduction of fee award while expressing skepticism toward aspects of its reasoning). The Sixth Circuit has more recently reaffirmed Lilley, pointing to the "significant overlap in the legal theories" underlying the plaintiff's discrimination and retaliation claims. Imwalle v. Reliance Medical Products, Inc., 515 F.3d 531, 555 (6th Cir. 2008).

These precedents weigh against Samsung for good reason: often, as here, discrimination and retaliation claims are factually and legally related, a crucial factor under Hensley. Samsung argues that "[t]he claims are fundamentally different," pointing to a Supreme Court case considering the relationship between the discrimination and retaliation provisions:

> 'The antiretaliation provision seeks to secure that primary objective by preventing an employer from interfering (through retaliation) with an employee's efforts to secure or advance enforcement of the Act's basic guarantees. **The substantive provision seeks to prevent injury to individuals based on who they are, i.e., their status. The antiretaliation provision seeks to prevent harm to individuals based on what they do, i.e., their conduct**.'

Resp. at 10 (quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 63 (2006)) (emphasis in the brief). But Burlington's observation that discrimination and retaliation are not coextensive concepts—made in the context of a case holding that retaliation protects more than workplace activity, without any mention of attorney fees—does not mean that claims based on these concepts are unrelated. In fact, the non-emphasized portion of the quotation is a neat restatement of their relationship: the antiretaliation provision protects employees seeking to enforce the antidiscrimination provision.

Furthermore, Title VII only protects opposition to allegedly discriminatory conduct when the opposition is based on a reasonable and good faith belief that the conduct was unlawful, even if the allegedly discriminatory conduct is not ultimately proved to have been unlawful. See, e.g., Yazdian v. ConMed Endoscopic Techs., Inc., 793 F.3d 634, 646 (6th Cir. 2015) (citing the Equal

6

Employment Opportunity Commission Manual ¶ 8006). Thus, Sommers-Wilson's effort to prove the discrimination claim served the additional purpose of proving that she had a good faith and reasonable belief for opposing alleged discrimination, an element of her successful retaliation claim.

Finally, a common core of facts links the unsuccessful and successful legal claims in this case. Sommers-Wilson's performance at her job, and the timing of Samsung's decision to fire her, were both at issue in the discrimination and retaliation claims. For example, had the Court or the jury accepted Samsung's claim that "the decision to terminate [Sommers-Wilson] was made in late August, early September 2015 prior to any alleged 'protected activity,'" Mot. for Summ J. at 22 (Dkt. 23); see also Tr. Volume 7, at 49 (Dkt. 126), the discrimination and retaliation claims would have failed. Had the jury accepted that the decision to fire her "was all business," Tr. Volume 7, at 49, both sets of claims would have failed.

Samsung attempts to separate the claims by observing that "[o]n the retaliation claim, [Sommers-Wilson] focused solely on Samsung's post-October 12, 2015 response to her complaint." Resp. at 11. This is not true. Sommers-Wilson discussed her work history and her performance at the company to support her claim Samsung did not fire her for poor job performance. This effort required her attorneys to discuss events prior to October 12, 2015. Laughbaum began her closing statement on that very point:

> Let me just start with the premise by the defendant in this case, Samsung. There was no discrimination or retaliation against Beth Sommers-Wilson, she was just a poor program manager. Samsung's position is that this just all comes down to leadership, Beth couldn't lead the team, she was a poor program manager and had to be fired, but look at Beth's record before and after Samsung.

Tr. Volume 7, at 7.

By debating the cause of Sommers-Wilson's firing, both parties treated the discrimination and retaliation claims as related by a common core of facts and overlapping legal theories. Furthermore, the Supreme Court has spoken to the relatedness of the legal theories, and the Sixth Circuit has awarded fees in cases that featured unsuccessful discrimination but successful retaliation claims. Samsung's argument that Sommers-Wilson's attorney fee should be reduced because the unsuccessful discrimination claim was unrelated to the successful retaliation claims is unpersuasive.

The second question the Court must ask under Hensley is whether the plaintiff achieved a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award. In evaluating the degree of success, the Court need not consider the value of the award relative to the attorney fee requested, as the Supreme Court has refused to adopt a rule that attorney fees under civil rights statutes be proportionate to the underlying damages award. See City of Riverside v. Rivera, 477 U.S. 561, 581 (1986) (plurality).[2] As the Sixth Circuit has explained, "the value of the rights vindicated goes beyond the actual monetary award, and the amount of the actual award is not controlling." McHenry v. Chadwick, 896 F.2d 184, 189 (6th Cir. 1990); see also Bldg. Serv. Local 47 Cleaning Contractors Pension Plan v. Grandview Raceway, 46 F.3d 1392, 1401 (6th Cir. 1995) (noting that "there is no requirement that the amount of an award of attorneys' fees be proportional to the amount of the underlying award of damages").

Sommers-Wilson prevailed on one of her two Title VII claims. The jury instructions did not suggest that damages should depend on whether Sommers-Wilson prevailed on both claims,

---

[2] Although Justice Powell concurred only in the Court's judgment, he also rejected a proportionality rule with respect to attorney fees. Id. at 585.

and nothing in the record suggests that a finding of discrimination would have led to more damages. The economic harm would be no different if Samsung had discriminated against her; and with respect to non-economic damages, the Court cannot infer from the jury's award that it distinguished between the suffering of someone who was the victim solely of retaliation, rather than discrimination <u>and</u> retaliation.

Had the jury found for Sommers-Wilson on the discrimination claim, it might have imposed greater punitive damages. But this does not bear on the degree of success Sommers-Wilson obtained. First, jury awards for punitive damages are not determined with enough rigor or consistency that a court can determine how one more claim would have changed the award. Second, the jury awarded Sommers-Wilson $625,000—an amount that evidences a high degree of success for her retaliation claim, and an amount that would have evidenced a high degree of success had she prevailed on all her claims. Third, as a practical matter, Sommers-Wilson would not have recovered more than the $50,000 she recovered in punitive damages, even if she had succeeded on the discrimination claim and received a larger jury award. The damages cap does not change depending on the number of successful claims. <u>See</u> <u>Hudson v. Reno</u>, 130 F.3d 1193, 1199-1201 (6th Cir. 1997), <u>abrogated on other grounds</u>, <u>Pollard v. E.I. du Pont de Nemours & Co.</u>, 532 U.S. 843 (2001). Successful discrimination claims would not have provided Sommers-Wilson any more money in punitive damages.

Samsung proposes a different analysis of damages capping by arguing that "the jury essentially awarded Sommers a grand total of $280,000." Resp. at 3. This argument both mischaracterizes the jury's award and fails to justify a reduction in the fee award. First, the jury awarded $855,000, and neither Congress's decision to impose a damages cap nor this Court's fulfillment of its obligation to enforce that cap changes what the jury did. Second, Samsung

9

identifies no legal authority showing that a statutorily-mandated reduction in damages justifies a reduction in an attorney fee award. To the contrary, courts have held that the fact that damages are reduced subject to a cap is evidence that the prevailing party and its counsel obtained the maximum relief possible, justifying a full fee award. See, e.g., Nigh v. Koons Buick Pontiac GMC, Inc., 478 F.3d 183, 190 (4th Cir. 2007) (holding that where the plaintiff received the maximum award possible—$1,000 for a Truth in Lending Act violation—defendant's "contention that this recovery is somehow de minimis betrays a profound misunderstanding of either the expression or the facts of this case."). In a recent case Samsung identifies as apposite to the instant case, the Sixth Circuit treated an award above the statutory damages cap as evidence of the plaintiff's success. See Hubbell v. FedEx SmartPost, Inc., 933 F.3d 558, 576 (6th Cir. 2019) ("[T]he initial jury verdict was greater than the statutory cap on damages. Even if Hubbell had prevailed on all her claims, she could not have recovered any more money under Title VII.").[3]

The "most critical factor is the degree of success obtained." Hensley, 461 U.S. at 436. Here, Sommers-Wilson won significant compensatory damages and full punitive damages as allowed by law; therefore, there is no basis for a reduction.

---

[3] There may be cases in which the existence and application of a fee cap counsels in favor of reducing attorney fees, particularly where plaintiffs recover limited compensatory damages or otherwise obtain a limited degree of success in other areas of their claims. See, e.g., Parrish v. Sollecito, 280 F. Supp. 2d 145, 173 (S.D.N.Y. 2003) (reducing a fee award by ten percent from the lodestar based in part on the imposition of a punitive damages cap, where "limited recovery of actual damages [entailed] limited success, despite the obviously considerable success entailed in the jury's punitive damage award"). Moreover, when considering a request for an enhancement in fee awards, it is reasonable to disregard the magnitude of very large awards when application of the damages cap precludes recovery of damages beyond the cap. See, e.g., Khalaf v. Ford Motor Co., Case No. 15-12604, at 7-8 (E.D. Mich. Sept. 11, 2019) (Dkt. 141-1 in this case) (denying a fee enhancement where the jury awarded $15,000,000 in punitive damages, reduced by statutory cap to $300,000). But here, as in Khalaf, the awards for compensatory damages and for recoverable punitive damages are evidence of a job well done.

Two other points on this topic bear mentioning: the relevance of Farrar v. Hobby, 506 U.S. 103 (1992), and the gap between what Sommers-Wilson requested and what the jury awarded. First, Samsung cites Farrar's statement that Section 1988 attorney fee awards were not intended to produce a windfall for attorneys. Id. at 115. However, Farrar addressed a judgment of one dollar for nominal damages and held that an award of nominal damages in a civil rights suit "highlights the plaintiff's failure to prove actual, compensable injury," an essential element of a claim for monetary relief. 506 U.S. at 115. Sommers-Wilson did not fail in this respect: a jury awarded $855,000 in damages. Thus, Farrar does not limit Sommers-Wilson's recovery.

Second, Defendants argue that Sommers-Wilson did not prevail completely, because her attorney asked for far more damages than she eventually received. Resp. at 2. But Sommers-Wilson's degree of success should be measured relative to what the facts warranted, not the demands of the complaint or the puffery of a trial attorney's closing statement. Cf. Estate of Enoch ex rel. Enoch v. Tienor, 570 F.3d 821, 823 (7th Cir. 2009) (holding that "even though the complaint set out an absurd claim for damages, that should not be used against plaintiffs who obtained a significant judgment"). Relative to the facts, Sommers-Wilson did quite well. Therefore, Sommers-Wilson's failure to prevail on the discrimination claims does not warrant a reduction in the fee award.

Considering the two Hensley questions together, Sommers-Wilson's attorney fee award should not be reduced because the discrimination claims failed. She did not lose "significant and distinct parts of the case," as Samsung alleges. See Resp. at 3. She lost a battle but won the war, and her attorney fee should reflect that fact.

### B. Co-Counsel Compensability

Samsung argues that Sterling's time is not compensable, pointing only to the fact that Sterling never appeared before the Court, Resp. at 13, but citing no law supporting the claim that appearing is necessary to obtain attorney fees. The amount of time for which Sterling seeks compensation—13.75 hours—is appropriate for a case of this magnitude. Even the most experienced and skilled attorneys benefit from collaboration with their colleagues, and there is nothing unreasonable about an experienced lawyer, such as Laughbaum, consulting with Sterling, her firm's managing partner.

As far as Farrar's time, Samsung contends that Farrar spent only 3.7 hours prior to the month of the trial working on the case, and at trial, he did not perform "real legal work—he essentially ran the electronic exhibits for Laughbaum at trial, clerical work that could have been done by a paralegal or legal assistant." Resp. at 13-14. Sommers-Wilson characterizes Farrar's work at trial as "double duty," providing "daily, invaluable assistance and feedback to Ms. Laughbaum" and providing technical support. Mot. at 8.

Samsung, which sent multiple lawyers to trial and whose lawyers defended their "right to banter" among themselves, Tr. Volume 1B, at 72 (Dkt. 120), does not persuade the Court that Farrar's time was not valuable or compensable. However, based on the Court's observation, Samsung is correct that Farrar spent much of trial providing technical support and none of it examining witnesses or arguing before the Court. The Court will exercise its discretion to account for these facts. The role that Farrar assumed—providing technical support and private feedback to Laughbaum—would be appropriate for an average attorney with six-to-ten years of experience. The mean billing rate in Michigan for attorneys with six-to-ten years of experience in 2017 was $239 per hour. State Bar of Mich., 2017 Economics of Law Practice, at 4 (2017) ("State Bar

Survey"), https://www.michbar.org/file/pmrc/articles/0000153.pdf. Therefore, the Court sets Farrar's rate at $239 per hour rather than the $275 Sommers-Wilson seeks. This ruling does not reflect the Court's assessment of Farrar's ability, but rather the appropriate rate of payment for a lawyer competently performing the work Farrar performed.

**C. The Distribution of Labor**

Samsung raises another issue related to Farrar: "If Mr. Farrar, Michigan and Hofstra-educated, with ten years' experience, is so good, why did he not do more of the work that Ms. Laughbaum now wants to be compensated for at a rate of $400 per hour?" Resp. at 14. Samsung points to trial days, when Laughbaum averaged over 16 hours per day of billing over eight days. Id. This argument fails because the lead attorney in a jury trial case has a right to treat the trial as an all-consuming activity while the trial is occurring, and to bill for the work she performs.

But more broadly, Samsung's argument fails because Samsung does not identify particular tasks that could have been performed more efficiently by someone below Laughbaum's paygrade. Without identifying such tasks, Samsung cannot overcome the reasonable inference that a more experienced and skilled attorney can perform a given task faster or better than could her more junior colleague, or that she exercised appropriate billing judgment. Furthermore, the Court is not in a position to assess how the law firm Sommers-Wilson hired to represent her staffs its cases or how available Farrar was to play a larger role in the case.

Two additional facts counsel against reducing the fee award because Laughbaum did most of the work herself. First, Sommers-Wilson won the case. This does not mean her attorneys did everything perfectly, but it lends her lawyers some credibility when defending "the manner in which their services were utilized." See Reply at 5 (Dkt. 138). Second, because Sommers-Wilson's lawyers took the case on a contingent fee basis, they stood to lose the opportunity cost

13

of the time spent on this case had the law suit been unsuccessful. Their exercise of billing judgment, therefore, not only receives the deference afforded to any upstanding member of the bar, but also the additional deference owed to a lawyer who assumes the risk of losing the case. As one appellate court put it:

> It must also be kept in mind that lawyers are not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees. The payoff is too uncertain, as to both the result and the amount of the fee. It would therefore be the highly atypical civil rights case where plaintiff's lawyer engages in churning. By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker.

Moreno v. City of Sacramento, 534 F.3d 1106, 1112 (9th Cir. 2008). The distribution of work between Sommers-Wilson's attorneys does not warrant a reduction.

### D. The Reasonableness of the Rates and Fee Enhancements

Next, Samsung disputes Laughbaum's rate.[4] The standards for calculating the lodestar and adjusting upward or downward are discussed above. Laughbaum has submitted bills at an hourly rate of $325 for her work before October 19, 2018, and $400 for her work since that date. Sommers-Wilson requests a fee enhancement of approximately 10% with respect to Laughbaum's billing, such that Laughbaum would be compensated at the $400 rate for the entirety of her work.

The parties cite the following facts, each of which relates to a "Johnson factor" courts may consider in ascertaining the lodestar and adjusting the award. See Hensley, 461 U.S. at 430 n.3.

---

[4] Farrar's rate has already been reduced, and while Samsung objects categorically to Sterling's compensability, it does not contest his $450 billing rate or the reasonableness of specific hours spent on the case. Therefore, Sommers-Wilson is entitled to the full compensation requested for Sterling's work on the case.

14

- Defense attorneys John Below and Dennis Egan bill at hourly rates of $375 and $395 respectively. Resp. at 12. These numbers show Laughbaum's rates of $325 and $400 to be in the same ballpark as opposing counsel.[5] Furthermore, Laughbaum's weighted average rate of approximately $365 per hour is below both of those numbers,[6] although Below and Egan have not stated whether their rates have changed over the course of this litigation.

- Samsung alleges that Laughbaum does not disclose when, if ever, she works on an hourly basis. Resp. at 13. In response, she states that she does some hourly work "for which she has billed and received $450 an hour." Reply at 5.

- Chief Judge Hood accepted a magistrate judge's report and recommendation setting a $400 hourly rate for Laughbaum for work performed in 2013-2015. 7/21/17 Order Varlesi v Wayne State Univ., et al., Case No. 10-14793, at 2 (E.D. Mich. July 21, 2017) (Dkt. 135-7 in this case).

- Laughbaum described her fee agreement as follows: "I have a contingent fee contract with Beth Sommers-Wilson which provides for an attorney fee of 1/3 of the net recovery, defined to include the total amount of recovery, less costs, and including any court awarded attorney fees."

- Based on statistics found in the State Bar Survey, Laughbaum bills at the higher end of comparable attorneys. Attorney with 31-35 years of experience have a median hourly rate of $250, a mean rate of $275, a 75th percentile rate of $325, and a 95th percentile rate of $515. Attorneys in Oakland County (south of M-59) have hourly rates of $275 at the median, $280 at the mean, $350 at the 75th percentile, and $470 at the 95th percentile. Plaintiff-side employment lawyers have an hourly rate of $300 at the median, $313 at the mean, $380 at the 75th percentile, and $485 at the 95th percentile.

- In an opinion filed after the close of briefing on this motion, in a case that Laughbaum had highlighted in her initial brief as "one of the largest, if not the largest, verdict in a single-plaintiff employment case in the history of this court" and one of the highlights of Laughbaum's career, Mot. at 7, Judge Battani considered a very similar debate to the one the Court encounters here. See Khalaf v. Ford Motor Co., Case No. 15-12604 (E.D. Mich. Sept. 11, 2019) (Dkt. 141-1 in this case). Judge Battani accepted as reasonable Laughbaum's rates of $325 before October 19, 2018, and $400 since October 19, 2018, id. at 5; reduced Sterling's rate

---

[5] It also means that during trial, the combined rate of Laughbaum and Farrar was substantially lower than the combination of Below and Egan.

[6] The weighted average rate is the total award requested for Laughbaum's work divided by the total number of hours billed.

15

to $400, id. at 5-6; and rejected an enhancement that would have set Laughbaum's rate at $400 for the entire case, id. at 7-8.

Taking all these factors into account, the Court sets Laughbaum's reasonable hourly rate at $325 for work performed before October 19, 2018, and $400 for work from that date on. Adjustments and enhancements are denied. Laughbaum's $400 billing rate is at the high end of comparable attorneys. However, she succeeded in winning a difficult case. Furthermore, she took the case on a contingent fee agreement, allowing her to account for the risk of loss in her billing rate. Hamlin v. Charter Twp. of Flint, 165 F.3d 426, 438 (6th Cir. 1999) (holding that "the contingent nature of the fee may be considered when calculating the reasonable hourly billing rate to provide an allowance for contingent risks assumed by the attorney"). The Sixth Circuit has said that the fee should be one that is "adequately compensatory to attract competent counsel yet which avoids producing a windfall for lawyers." Adcock-Ladd, 227 F.3d at 349. Based on the results achieved, the quality of lawyering, and the challenges of the specific case, the Court is satisfied that this award does not provide a windfall.

Sommers-Wilson requests a fee enhancement for Laughbaum's time, such that Laughbaum's rate would be set at $400 for the entirety of her work on the case. This request is rejected. First, based on the State Bar Survey, a litigant limited to paying $325 per hour for counsel of Laughbaum's experience, location, and area of specialty would not find herself priced out of the market. A rate of $325 per hour is above the floor Adcock-Ladd has set of "adequately compensatory to attract competent counsel." Id.

With that said, the basis for Sommers-Wilson's claim is not that the rate used for the lodestar is too low to attract competent counsel, but that it is too low to attract Laughbaum. Here, the finding that Laughbaum essentially priced her services appropriately works against Sommers-

16

Wilson. Just as Laughbaum's later rate of $400 may be the upper end of the spectrum for an appropriate fee, her earlier rate of $325 may be at the lower end of the spectrum. But both are within the range appropriate for her services. Whether the Court considers the rates of $325 and $400 for their respective time periods, or the weighted average rate of approximately $365, Laughbaum's rate-as-billed proves to be an appropriate measure of the value of her services, at least as demonstrated by her work in this case.

While the results in this case were excellent, neither the award nor the lawyering was so extraordinary that an enhancement would be appropriate. Enhancement is reserved for rare cases, and this simply is not one of them. Judge Battani's similar rejection of an enhancement is instructive, particularly given that it came in a case where Laughbaum's client won substantially more money. See 9/11/2019 Order in Khalaf v. Ford Motor Co., Case No. 15-12604 (E.D. Mich. Sept. 11, 2019) (Dkt. 141-1 in this case) (awarding the same rates and rejecting a similar enhancement in a case where the plaintiff won $1.7 million in pecuniary damages, $100,000 in emotional distress damages, and $15 million dollars in punitive damages, the latter of which were reduced to $300,000).

Sommers-Wilson is, therefore, entitled to attorney fees for Laughbaum at a rate of $325 per hour for her time before October 19, 2018, and $400 per hour for her time since that date.

**E. Quarter Hour Billing**

Samsung seeks a reduction in the fees because Laughbaum and her colleagues billed at a quarter hour rate. There is precedent for a reduction where that billing practice results in overbilling, but "the purpose is to counter over-billing, not punish the failure to use tenth-of-an-hour billing." Yellowbook Inc. v. Brandeberry, 708 F.3d 837, 849 (6th Cir. 2013). Where it is the normal practice of the firm, and the attorneys do not use quarter-hour billing to charge a quarter

hour for a minute task, courts will decline to issue such a reduction. See 9/11/2019 Order in Khalaf v. Ford Motor Co., at 6-7. Laughbaum has asserted that her firm "does not litter its bills with simple tasks" and quarter hour billing is her firm's regular practice. Reply at 5. Quarter hour billing does not warrant a reduction.

### F. Unnecessary Time and Expense

The only specific expenses Samsung points to that might be considered unnecessary are the drafting of subpoenas to Stefan Roepke and Robert Schaffernak when, according to Samsung, Samsung's counsel pledged that they would appear. Resp. at 15. While the billing records are not entirely clear, the time spent on these issues appears to be minimal. See Ex. C to Mot. Furthermore, ensuring the appearance of crucial witnesses is more likely evidence of careful preparation than bill padding, particularly for a lawyer working on a contingent fee.

### G. Costs

Plaintiff seeks $10,781.51 in costs, to which defendant objects almost categorically. See Resp. at 16-17. However, the Court will only address specific objections. First, Samsung is correct that "Copies/postage/telephone/misc." is vague. Without more detailed information, Samsung in unable to make more specific objections, and the Court is unable to rule on them; a schedule for supplemental briefing is set out below. Second, Sommers-Wilson is correct that Westlaw charges are a normal part of litigation, and Laughbaum's reply brief states that the costs were billed to the client. Reply at 6-7. These costs are awarded to Sommers-Wilson. Finally, Sommers-Wilson is correct that the Clerk of the Court has already taxed witness fees without objection from Samsung, so the objection to those fees has been waived.

Following supplemental briefing, the Court will issue an order on costs currently labeled "Copies/postage/telephone/misc.," but will now award Sommers-Wilson all other costs described in Ex. D to Mot. (Dkt. 135-5).

**H. Interest**

Samsung does not contest that Sommers-Wilson is entitled to pre- and post-judgment interest under MCL § 600.6013 and post-judgment interest under 28 U.S.C. § 1961. Sommers-Wilson is also entitled to federal post-judgment interest under 28 U.S.C. § 1961 as to the attorney fees awarded from the date of the entry of judgment. See Associated Gen. Contractors of Ohio, Inc. v. Drabik, 250 F.3d 482, 492-493, 495 (6th Cir. 2001).

### IV. CONCLUSION

Sommers-Wilson prevailed in this case and is entitled to attorney fees. The failed discrimination claims provide no basis for reducing the fee award. Sommers-Wilson is entitled to the following amounts for the three lawyers who worked on her case.

- **Raymond Sterling:** 13.75 hours at a rate of $450 per hour, for a total of $6,187.50;

- **Carol Laughbaum:** 292.5 hours at a rate of $325 per for her work before October 19, 2018, and 342.15 hours at a rate of $400 for her work beginning on October 19, 2018, for a total of $231,922.50;

- **Brian Farrar:** 83.25 hours at a rate of $239 per hour, for a total of $19,896.75.

Sommers-Wilson is further entitled to the costs and interest requested in her motion, except for costs under the heading of "Copies/postage/telephone/misc.," on which the Court will later rule.

Sommers-Wilson is ordered to produce a more detailed description of these charges on or before December 6, 2019. Samsung may file objections on or before December 13, 2019, and Sommers-Wilson may respond on or before December 20, 2019. Sommers-Wilson's more

detailed description and Samsung's objections may not exceed ten pages, exclusive of attachments; Sommers-Wilson's response may not exceed three pages.

SO ORDERED

Dated: November 27, 2019　　　　　　　　　　s/Mark A. Goldsmith
　　　　　Detroit, Michigan　　　　　　　　　　MARK A. GOLDSMITH
　　　　　　　　　　　　　　　　　　　　　　　United States District Judge